IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

SOUTHERN DISTRICT OF MISSISSIPPI
FILED
AUG 0 5 2010
J. T. NOBLIN, CLERK
BY_____ DEPUTY

KAREN GUENIOT-KORNEGAY,
Individually, and on Behalf of All of the
Wrongful Death Beneficiaries of
MATTHEW DYLAN KORNEGAY                                         PLAINTIFF

VS.                                       CIVIL ACTION NO. 3:10cv429-TSL-FKB
                                                         JURY DEMAND

BLITZ U.S.A., INC. and
WAL-MART STORES, INC.                                          DEFENDANTS

## COMPLAINT

**COMES NOW** the Plaintiff, Individually, and on behalf of all of the wrongful death beneficiaries of Matthew Dylan Kornegay, by counsel and through counsel, and for her wrongful death cause of action pursuant to Miss. Code Ann. § 11-7-13, alleges the following:

### INTRODUCTION

On or about March 5, 2010, a gas storage container (hereinafter "subject gas can") manufactured by Defendant Blitz U.S.A., Inc. (hereinafter "Blitz") and sold by Defendant Wal-Mart Stores, Inc. (hereinafter "Wal-Mart") exploded, causing Matthew Dylan Kornegay (hereinafter "Dylan") to suffer severe burns which ultimately caused his death. This action is brought against the Defendants pursuant to the laws of the State of Mississippi to recoup all compensatory and punitive damages to which Plaintiff is entitled as a result of the wrongful death of her son, Matthew Dylan Kornegay.

## PARTIES

1. Plaintiff Karen Gueniot-Kornegay is an adult resident citizen of Rankin County, Mississippi. Karen Gueniot-Kornegay brings this suit individually and on behalf of all of the wrongful death beneficiaries of Matthew Dylan Kornegay.

2. Defendant Blitz U.S.A., Inc. is an Oklahoma corporation that maintains its principal place of business in the State of Oklahoma. Blitz may be served with process by serving its registered agent, Rocky Flick, Blitz U.S.A., Inc., 404 26th Ave. NW, Miami, Oklahoma 74354-2206.

3. Defendant Wal-Mart Stores, Inc. is a Delaware corporation licensed to do business in the State of Mississippi and maintaining its principal place of business in the State of Arkansas. Wal-Mart Stores, Inc. may be served with process by serving its registered agent, CT Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a). The matter in controversy exceeds the sum of Seventy Five Thousand Dollars ($75,000.00), exclusive of interest and costs, and diversity of citizenship exists between Plaintiff and Defendants.

5. Venue is proper in the District Court of the Southern District of Mississippi, Jackson Division pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claim occurred in whole or in part within this District.

## FACTS

6. At a time prior to March 5, 2010, Blitz designed and manufactured a portable plastic gas can for sale in the stream of commerce.

7. The subject gas can was sold to Wal-Mart for distribution in Flowood, Rankin County, Mississippi, and thereafter sold by Wal-Mart to Plaintiff Karen Gueniot-Kornegay.

8. On or about March 5, 2010, Matthew Dylan Kornegay was at the McPhail residence at 1606 N. Old Canton Rd., Canton, Madison County, Mississippi. Dylan poured gasoline from the subject gas can in order to keep a bonfire going, which had been dying down. Shortly thereafter, gasoline vapors outside the subject gas can ignited and the flame flashed back into the vapor trail inside the container, causing the subject gas can to explode and Dylan's entire body to catch on fire.

9. As a result of the fire and explosion, Dylan suffered third and fourth degree burns over seventy-six percent of his body. On April 11, 2010, Dylan died from his burn injuries, resulting sepsis, and cardiac arrest.

10. Blitz designed, manufactured, assembled, marketed, distributed and sold the subject gas can that caused Dylan's injuries and death.

11. The subject gas can was not modified or altered after it left Defendants' control, and Dylan was utilizing the subject gas can in an ordinary and reasonable manner in which the subject gas can was intended and reasonably expected to be used.

12. The subject gas can was defective and unsafe for its intended purposes at the time if left Blitz's control in that the design failed to include a flame arrestor device, which is a necessary safety device that would have prevented Dylan's injuries and subsequent death.

13. Blitz knew or should have known of the subject gas can's susceptibility to flashback, which occurs when gasoline vapors ignite and the flames chase the vapor trail back into the can, causing an explosion and/or spew of flames and burning gasoline.

14. Wal-Mart had actual or constructive knowledge of the defective condition of the subject gas can at the time it sold the subject gas can to Karen Gueniot-Kornegay.

15. As a direct and proximate result of Defendants' collective acts and/or omissions in the design, manufacture, assembly, marketing, distribution and sale of the subject gas can, which lacked a flame arrestor, Matthew Dylan Kornegay suffered severe personal injuries, including, but not limited to, severe burns, physical pain and impairment, which caused his death.

## CAUSES OF ACTION

### COUNT 1 – DESIGN DEFECT
### Blitz

16. Plaintiff re-alleges and incorporates in this count each and every preceding allegation as if fully pleaded herein.

17. The subject gas can designed, manufactured, assembled, marketed, distributed, and sold by Blitz was defective and/or unreasonably dangerous when sold.

18. The subject gas can designed, manufactured, assembled, marketed, distributed, and sold by Blitz was the producing cause of Dylan's injuries and death.

19. Blitz is engaged in the business of designing, manufacturing, assembling, marketing, distributing, and selling portable gas cans, including the subject gas can, to consumers within the stream of commerce.

20. Blitz expected the subject gas can, so introduced and passed on in the course of trade, to ultimately reach the residential consumer and/or users without substantial change in the condition in which it was originally sold.

21. The subject gas can did in fact reach Plaintiff and Dylan without substantial change in the condition in which it was originally sold by Blitz and unexpectedly failed under ordinary and foreseeable use.

22. At the time the portable gas can left Blitz's control, and at all times complained of, safer alternative designs were available that would have eliminated the risk of the subject gas can exploding without substantially impairing the usefulness and intended purpose of the product.

23. The subject gas can was unreasonably dangerous and defective in that its design and construction did not incorporate a flame arrestor, a technologically and economically feasible safety device that would have prevented the explosion in the present case.

24. A flame arrestor, sometimes called a flame arresting screen, flash arrestor or spark arrestor, is a small metal device that is placed in a container's openings and allows liquids to flow out of the container but prevents the flashback of flames back into the container. The device consists of either a perforated metal screen or a wire mesh screen.

25. The efficacy of flame arrestors has been known to the gasoline manufacturing industry for decades, and particularly the manufacturers of portable gas cans have been aware of their existence since before they were first placed in industrial gas cans in the 1950's and began being placed in consumer gas cans in 1978.

26. For more than a quarter century, the utility and efficacy of flame arrestors has been a topic of discussion in the media and national publications and the subject of numerous lawsuits filed by consumers, users, and bystanders who have been burned and/or killed in encounters with portable gas cans that were not equipped with the device.

27. Consequently, Blitz has known, or should have known, for decades prior to this incident that gas cans without flame arrestors were susceptible to flashback (i.e., when gasoline vapors outside the container ignite, the flames can follow the vapor trails back inside the container causing it to explode and/or spew flames and burning gasoline).

28. Without the inclusion of a flame arrestor, the foreseeable risk of injury and/or death associated with the use of the subject gas can far exceeded any utility and/or benefits associated with its design.

29. Nevertheless, despite the wealth of available scientific knowledge, Blitz has made, and continues to make, a conscious decision to endanger the safety of consumers, users, and bystanders by refusing to incorporate a well-known safety device into its portable gas cans, despite the fact that this safety device is economically and technologically feasible.

30. As a direct and proximate result of one or more of Blitz's acts or omissions as described herein and as a direct and proximate result of the subject gas can's defective design, Matthew Dylan Kornegay suffered severe burn injuries, and he died as a direct result of those injuries.

31. Additionally, the Blitz gas can suffered from a defect in manufacturing that caused their caps not to fix securely to the can and therefore, to be lost and gasoline stored in the cans to age.

32. As such, Blitz is liable pursuant to the provisions of Miss. Code Ann. § 11-1-63.

## COUNT 2 – FAILURE TO WARN
### Blitz

33. Plaintiff re-alleges and incorporates in this count each and every preceding allegation as if fully pleaded herein.

34. Blitz failed to provide adequate warnings that would be reasonably calculated to catch the attention of a reasonably prudent person given that its warnings were not conspicuous.

35. At the time the portable gas can left Blitz's control, consumers and/or foreseeable users, such as Dylan, were not, and still are not, likely to possess knowledge of the extent and magnitude of the risks associated with using Blitz's portable gas cans.

36. Without such knowledge, consumers and/or foreseeable users would not be in a position to avoid the product's inherent dangers through the exercise of ordinary and reasonable care. Conversely, Blitz knew, and was certainly in the best position to know, that its portable gas cans, as designed, posed a tremendous and horrific risk of injury and death to consumers, users, and bystanders.

37. As a direct and proximate result of one or more of Blitz's failures to warn of the subject gas can's defective design, Dylan suffered severe burn injuries, and he subsequently died as a result of those injuries.

38. As such, Blitz is liable pursuant to the provisions of Miss. Code Ann. § 11-1-63.

## COUNT 3 – NEGLIGENCE
### Blitz

39. Plaintiff re-alleges and incorporates in this count each and every preceding allegation as if fully pleaded herein.

40. Blitz owed consumers and/or foreseeable users, including Plaintiff and Dylan, the duty of reasonable care in its design, manufacture, assembly, marketing, distribution and sale of the subject gas can.

41. Blitz ignored and/or breached that duty by its following negligent acts and/or omissions:

    A. Failed to design and produce a reasonably safe portable gas can;

7

B. Designed, manufactured, assembled, marketed, distributed, and sold a portable gas can that was defective;

C. Placed into the stream of commerce a portable gas can that was defective in design;

D. Placed into the stream of commerce a portable gas can that was defective in that it failed to contain adequate warnings and instructions;

E. Placed into the stream of commerce a portable gas can that was unfit for its intended use;

F. Placed into the stream of commerce a portable gas can likely to cause injury in its ordinary use;

G. Placed into the stream of commerce a portable gas can that contained manufacturing defects;

H. Failed to incorporate a flame arrestor in the product design;

I. Failed to properly test its portable gas can and prototypes thereof with flame arresting material;

J. Failed to provide adequate instructions and warnings with the product after learning, knowing, or having reason to know, of the defects existing in the product that rendered it unreasonably dangerous for its intended use;

K. Failed to provide adequate warnings that would be reasonably calculated to catch the attention of a consumer and/or user or that would convey a fair indication of the nature and extent of the dangers involved in using or misusing its product;

L. Failed to actively seek information regarding incidents in which consumers, users, and bystanders were injured and/or killed when they encountered portable gas cans;

M. Failed to actively seek information regarding incidents involving explosion and/or internal combustion of portable gas cans;

N. Failed to provide post-sale warnings after learning, knowing, or having reason to know of the defects existing in the product that rendered it unreasonably dangerous for its intended use;

O. Failed to take subsequent remedial measures or to recall the product after learning, knowing, or having reason to know of the defects existing in the product that rendered it unreasonably dangerous for its intended use;

P. Ignored and/or failed to investigate scientific, technological and industry information and studies regarding the efficacy of flame arrestors;

Q. Ignored and/or failed to investigate other lawsuits and/or similar incidents involving similar claims and incidents in which consumers, users, children, and/or bystanders were severely and routinely burned and/or killed when encountering such portable gas cans;

R. Failed to report incidences and lawsuits involving other consumers, users, and bystanders who have been burned and/or killed when encountering the portable gas cans to the Consumer Product Safety Commission;

S. Failed to warn that the gas can was not equipped with safety devices;

T. The subject gas can, as sold, posed a risk of flammable vapor ignition, flashback and explosion to users beyond that understood or contemplated by the average

      reasonable consumer, and the risks associated with this design outweighed its utility;

U. Blitz knew or should have known that consumers would use their gas cans to start and/or maintain a fire, creating an unreasonable and unexpected hazard of vapor ignition and resulting fire, without appropriate design features to prevent ignition and flashback.

42. As an actual and proximate result of Blitz's negligent acts and/or omissions, the subject gas can that caused Dylan's injuries and death was placed into the stream of commerce in a defective and unreasonably dangerous condition.

43. Dylan's injuries and death and the manner in which they occurred were reasonably foreseeable to Blitz, which had actual and/or constructive knowledge from within the industry, national publications, media reports and prior claims and lawsuits, that consumers, users, children and bystanders were being routinely burned and/or killed when encountering their portable gas cans.

44. As a direct and proximate result of one or more of Blitz's negligent acts or omissions as described herein, Dylan suffered severe burn injuries, and subsequently died as a result of those injuries.

## COUNT 4 – BREACH OF WARRANTY
### Blitz

45. Plaintiff re-alleges and incorporates into this count each and every preceding allegation as if fully pleaded herein.

46. Blitz, by and through the sale of its portable gas cans, expressly and impliedly warranted to the consumer and/or foreseeable users, such as Plaintiff and Dylan, that the container was fit for its ordinary and foreseeable purposes.

10

47.     Plaintiff and Dylan made ordinary use of the container in reliance on said warranties.

48.     Contrary to said warranties, the portable gas can was defective and unfit for its ordinary and foreseeable purposes, rendering it unreasonably dangerous.

49.     Blitz breached its express and implied warranties by one or more of the following respects, among others:

    A. Failure of the gas can itself and by improper marketing;

    B. Failure to equip the gas can with a flame arrestor and/or other safety devices to make the gas can safe for its foreseeable environment;

    C. Failed to provide adequate warnings about the inherent dangers involved in the use of gasoline and its gas can;

    D. Failed to warn that the gas can was not equipped with a flame arrestor or other safety devices;

    E. The gas can, as sold, posed a risk of flammable vapor ignition, flashback and explosion to users beyond that understood or contemplated by the average reasonable consumer, and the risks associated with its design outweighed its utility;

    F. Blitz knew or should have known of feasible alternative designs that would have significantly reduced and/or eliminated the risk of flammable vapor ignition and failed to employ said design alternatives to make it safe for its foreseeable environment;

G. Blitz knew or should have know that consumers would use gas cans to start and/or maintain fires, creating an unreasonable and unexpected hazard of vapor ignition and resulting fire, without appropriate design features to prevent flashback;

H. Failed to assure that the product design included a flame arrestor;

I. Failed to protect foreseeable users of the gas can from the dangers present in the use of such container, which dangers Blitz knew or should have known existed;

J. Failure to recall and/or repair the product;

K. Placed on the market a gas can which was unfit for its intended use;

L. Placed on the market a gas can which was not safe for the ordinary purpose for which it was sold.

50. As an actual and proximate result of Blitz's breach of said warranties, the subject gas can was placed into the stream of commerce in a defective and unreasonably dangerous condition.

51. Dylan's injuries and resulting death and the manner in which they occurred were reasonably foreseeable to Blitz, which had actual and/or constructive knowledge from within the industry, national publications, media reports, and prior claims and lawsuits, that consumers, users, children and bystanders were being routinely burned and/or killed when encountering their portable gas cans.

52. As a direct and proximate result of said breach of warranty, Dylan suffered severe burn injuries, and subsequently died as a result of those injuries.

53. As such, Wal-Mart is liable pursuant to the provisions of Miss. Code Ann. §§ 11-1-63, 75-2-314, and 75-2-315.

## COUNT 1 – DESIGN DEFECT
### Wal-Mart

54. Plaintiff re-alleges and incorporates in this section each and every preceding allegation as if fully pleaded herein.

55. The gas can was defectively design and unreasonably dangerous for its anticipated, intended and foreseeable use in the following ways:

   A. Wal-Mart sold a gas can without a flame arrestor and/or other safety devices;

   B. Wal-Mart participated in and impacted the design of Blitz's gas cans and knew that it had the ability to impact the design of Blitz's gas cans;

   C. Wal-Mart failed to provide adequate warnings about the inherent dangers involved in the use of gas containers they sold;

   D. Wal-Mart sold Blitz gas cans that contained manufacturing defects;

   E. Wal-Mart knew or should have known at the time it supplied the subject gas can that the can, as sold, was defectively designed because it posed a risk of flammable vapor ignition, flashback and explosion to users beyond that understood or contemplated by the average reasonable consumer/purchaser, and the risks associated with this design outweighed its utility;

   F. Wal-Mart knew or should have known of other available gas cans that were designed to significantly reduce and/or eliminate the risk of flammable vapor ignition, and failed to offer such cans for sale and instead sold the defective gas container to Plaintiff and knew of incidents were gasoline cans had exploded, causing burn injuries;

   G. Wal-Mart knew or should have known that consumers would use gas cans to start

and/or maintain fires, creating an unreasonable and unexpected hazard of vapor ignition and resulting fire, without appropriate design features to prevent flashback.

56. Wal-Mart had actual or constructive knowledge of the defects alleged herein at the time it supplied the product, had actually joked about the dangers at management and supplier meetings, and in putting the gas container into the stream of commerce, acted with complete indifference to and conscious disregard for the safety of Plaintiff, Dylan, and other foreseeable plaintiffs, and therefore an award of punitive damages is appropriate.

57. As a direct and proximate result of one or more of Wal-Mart's acts or omissions as described herein and as a direct and proximate result of the gas can's defective design, Dylan suffered severe burn injuries and subsequently died as a result of those injuries.

58. As such, Wal-Mart is liable pursuant to the provisions of Miss. Code Ann. § 11-1-63(h).

## COUNT 2 – FAILURE TO WARN

59. Plaintiff re-alleges and incorporates in this section each and every preceding allegation as if fully pleaded herein.

60. Wal-Mart failed to provide adequate warnings of the dangers associated with the use of Blitz gas cans that would be reasonably calculated to catch the attention of a reasonably prudent person.

61. At the time the portable gas can left Wal-Mart's control, consumers and/or foreseeable users, such as Dylan, were not, and still are not, likely to possess knowledge of the extent and magnitude of the risks associated with using Blitz's portable gas cans.

62. Without such knowledge, consumers and/or foreseeable users would not be in a position to avoid the product's inherent dangers through the exercise of ordinary and reasonable care. Conversely, Wal-Mart knew that its portable gas cans, as designed, posed a tremendous and horrific risk of injury and death to consumers, users, and bystanders.

63. Wal-Mart had actual or constructive knowledge of the inadequate warnings referenced *supra* at the time it supplied the product, had actually joked about the dangers at management and supplier meetings, and in putting the gas container into the stream of commerce, acted with complete indifference to and conscious disregard for the safety of Plaintiff, Dylan, and other foreseeable plaintiffs, and therefore an award of punitive damages is appropriate.

64. As a direct and proximate result of one or more of Wal-Mart's acts or omissions as described herein and as a direct and proximate result of the gas can's inadequate warnings, Dylan suffered severe burn injuries and subsequently died as a result of those injuries.

65. As such, Wal-Mart is liable pursuant to the provisions of Miss. Code Ann. § 11-1-63(h).

## COUNT 3 – NEGLIGENCE
## Wal-Mart

66. Plaintiff re-alleges and incorporates in this section each and every preceding allegation as if fully pleaded herein.

67. Wal-Mart committed one or more of the following negligent acts and/or omissions in the design, construction, manufacture, engineering, marketing and sale of the subject gas can:

    A. Wal-Mart sold a gas can without a flame arrestor and/or other safety devices;

    B. Wal-Mart participated in and impacted the design of Blitz's gas cans;

15

C. Wal-Mart failed to provide adequate warnings about the inherent dangers involved in the use of gas containers they sold;

D. Wal-Mart sold Blitz gas cans that contained manufacturing defects;

E. Wal-Mart knew or should have known at the time it supplied the gas can that the can, as sold, was defectively designed because it posed a risk of flammable vapor ignition, flashback and explosion to users beyond that understood or contemplated by the average reasonable consumer/purchaser, and the risks associated with this design outweighed its utility;

F. Wal-Mart knew or should have known of other available gas cans that were designed to significantly reduce and/or eliminate the risk of flammable vapor ignition, and failed to offer such cans for sale and instead sold the defective subject gas can to Plaintiff;

G. Wal-Mart knew or should have known that consumers would use gas cans to start and/or maintain fires, creating an unreasonable and unexpected hazard of vapor ignition and resulting fire, without appropriate design features to prevent flashback.

68. As a direct and proximate result of Wal-Mart's negligence, the subject gas can was sold in a defective condition, unreasonably dangerous when used as intended and when put to reasonably anticipated and/or foreseeable use.

69. Wal-Mart had actual knowledge of the defects alleged herein, had joked about them in management and supplier meetings, and in subsequently putting the subject gas can into the stream of commerce, acted with complete indifference to and conscious disregard for the safety of Plaintiff and Dylan, and therefore an award of punitive damages is appropriate.

16

70. Dylan's injuries and subsequent death, and the manner in which they occurred, were reasonably foreseeable to Wal-Mart, which knew or should have known that people were being severely burned when encountering gas containers.

71. As a direct and proximate result of one or more of Wal-Mart's acts or omissions as described herein, Dylan suffered severe burn injuries and subsequently died as a result of those injuries.

## COUNT 4 – BREACH OF WARRANTY
### Wal-Mart

72. Plaintiff re-alleges and incorporates in this section each and every preceding allegation as if fully pleaded herein.

73. Wal-Mart is a merchant of gas cans.

74. In selling and placing the gas can into the stream of commerce, Wal-Mart impliedly warranted that the gas can was merchantable and fit for the ordinary, anticipated and foreseeable purposes for which it was intended to be used.

75. Wal-Mart breached said implied warranty in one or more of the following respects, among others:

 A. Wal-Mart sold a gas can without a flame arrestor and/or other safety devices;

 B. Wal-Mart participated in and had impacted the design of Blitz's gas cans;

 C. Wal-Mart failed to provide adequate warnings about the inherent dangers involved in the use of gas containers they sold;

 D. Wal-Mart sold Blitz gas cans that contained manufacturing defects;

 E. Wal-Mart knew or should have known at the time it supplied the gas can that the can, as sold, was defectively designed because it posed a risk of flammable vapor ignition, flashback and explosion to users beyond that understood or contemplated

by the average reasonable consumer/purchaser, and the risks associated with this design outweighed its utility;

F. Wal-Mart knew or should have known of other available gas cans that were designed to significantly reduce and/or eliminate the risk of flammable vapor ignition, and failed to offer such cans for sale and instead sold the defective subject gas can to Plaintiff;

G. Wal-Mart knew or should have known that consumers use gas cans to start and/or maintain fires, creating an unreasonable and unexpected hazard of vapor ignition and resulting fire, without appropriate design features to prevent flashback.

76. As a direct and proximate result of Wal-Mart's breach of warranty, Dylan suffered severe burn injuries and subsequently died as a result of those injuries.

77. As such, Wal-Mart is liable pursuant to the provisions of Miss. Code Ann. §§ 11-1-63, 75-2-314, and 75-2-315.

## CAUSATION AND DAMAGES

78. Plaintiff re-alleges and incorporates in this section each and every preceding allegation as if fully pleaded herein.

79. Defendants caused the wrongful death of Matthew Dylan Kornegay as a result of the negligence and other tortious conduct set forth herein. Plaintiff demands money damages consistent with Mississippi law for the harm inflicted by Defendants, including, but not limited to the following:

A. Medical expenses;

B. Funeral expenses;

C. Past and future emotional distress;

    D. Past pain and suffering; and

    E. Past and future losses of wages, entitlements, support and other recoverable economic losses.

80. Defendants have exhibited such willful disregard and/or absence of due care and/or recklessness and/or gross negligence such that punitive damages are appropriate in this action.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff Karen Gueniot-Kornegay prays that she be awarded all compensatory and punitive damages due and owed, including attorneys' fees and costs associated with the prosecution of this action, as allowed by Mississippi law, and for such other and further relief as this Honorable Court deems just and proper.

Respectfully submitted, this the 3rd day of August, 2010.

_____
CASEY L. LOTT, MBN 101766
Attorney for Plaintiff

Of Counsel:

**LANGSTON & LOTT, P.A.**
100 South Main Street
Post Office Box 382
Booneville, MS 38229
Telephone: (662) 728-9733
Facsimile: (662) 728-1992